UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ELIZABETH A. T.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 4:20-cv-00224-TWP-DML |
| | ) |
| KILOLO KIJAKAZI,[2] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

Report and Recommendation on
<u>Complaint for Judicial Review</u>

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge REVERSE and REMAND the decision of the Commissioner of Social Security that plaintiff Elizabeth T. was not disabled.

---

[1] To protect privacy interests of claimants for Social Security benefits, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions. The plaintiff will therefore be referred to by her first name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is substituted for Andrew Saul as the defendant under Fed. R. Civ. P. 25(d) and the last sentence of 42 U.S.C. § 405(g) (action seeking judicial review of final decision of the Commissioner of Social Security "shall survive notwithstanding change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

## Introduction

Elizabeth applied in August 2015 for Disability Insurance Benefits under Title II of the Social Security Act.  Her application was denied through all levels of the administrative process, but after she filed a complaint for judicial review, she and the Commissioner agreed to a reversal and remand of the denial of benefits to allow for the conduct of further proceedings.  The same ALJ as before, Thuy-Anh T. Nguyen, presided on remand and held a hearing on July 14, 2020, at which Elizabeth and a vocational expert testified.  The ALJ issued a decision on August 14, 2020, finding that Elizabeth was not disabled at any time between her alleged onset date (July 17, 2015) and her date last insured (December 31, 2018).  The ALJ's August 14, 2020 decision became the final decision of the Commissioner because Elizabeth chose not to file written exceptions and the Appeals Council also declined to assume jurisdiction—options that are available when a final decision once was remanded for further consideration. 20 C.F.R. § 404.984.  Elizabeth timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Elizabeth contends that the ALJ erred in many respects. She contends that the ALJ never considered or analyzed the evidence that Elizabeth routinely will miss days of work because of weekly injections she regularly must receive and because of the effects of migraine headaches.  She urges that the ALJ's evaluation of medical opinions is without substantial evidentiary support.  The ALJ gave only partial weight to the opinions of Elizabeth's treating doctor and adopted an RFC

substantially identical to one suggested by a state agency reviewing physician at the reconsideration level of review, yet those physicians last reviewed the record evidence in early 2016. Finally, Elizabeth argues that the ALJ did not properly evaluate her statements about her impairments and their effects on her functioning.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address Elizabeth's assertions of error.

## **Standard for Proving Disability**

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Elizabeth is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's

impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work

exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

Before addressing Elizabeth's specific assertions of error, the court provides background information about her past work activity and then summarizes the ALJ's sequential findings.

## Background

**A.   Elizabeth has experience as a dental assistant.**

Elizabeth was born in 1985, was 30 years old at the alleged onset of her disability in July 2015, and was 35 years old at the time the ALJ issued her decision. She worked as a dental assistant for about 10 years before she no longer could perform the functions of that job and applied for disability benefits.

**B.   The ALJ determined at step five that Elizabeth was not disabled.**

Elizabeth's "date last insured" for purposes of Title II disability benefits was December 31, 2018. Thus, the issue before the ALJ was whether Elizabeth became disabled at any time between her alleged onset date in July 2015 and December 31, 2018, the date last insured. *See Shideler v. Astrue,* 688 F.3d 306, 311 (7th Cir. 2012) (claimant may obtain benefits under Title II only if she was disabled before the expiration of her insured status).

The ALJ found that Elizabeth had not engaged in substantial gainful activity since her alleged onset date. At step two, she found that Elizabeth suffered from a lengthy list of severe impairments between her alleged onset date and date last insured: small fiber/cryptogenic peripheral neuropathy, fibromyalgia, chronic fatigue syndrome, common variable immunodeficiency, Ehlers Danlos syndrome (a disorder that affects connective tissue), irritable bowel syndrome, migraines/occipital neuralgia, an affective disorder, and an anxiety disorder. (R. 1499). At step three, the ALJ concluded that no listings had been met or medically equaled. Elizabeth does not challenge the steps one through three findings.

For the RFC, the ALJ limited Elizabeth to light work with certain postural restrictions and protection from exposure to hazards. She found that Elizabeth could perform only simple and routine tasks and that because of her migraine headaches, she must avoid jobs in direct sunlight or that have more than a moderate level of noise within the work environment. (R. 1501). With this RFC, Elizabeth was incapable of performing her past work as a dental assistant, a skilled job. The ALJ accepted the vocational expert's opinion that other jobs existed in significant numbers in the national economy that a person with Elizabeth's RFC and vocational factors could perform: Housekeeping Cleaner and Merchandise Marker. She thus found at step five that Elizabeth was not disabled before her date last insured.

The court now addresses Elizabeth's contentions that the RFC is not supported by substantial evidence and therefore the step five finding must be reversed and remanded.

## Analysis

As noted at the outset, Elizabeth attacks the RFC on numerous grounds, including that the ALJ did not properly evaluate either her own or her doctor's opinions about her functioning and unreasonably gave too much weight to an outdated opinion by a state agency reviewing physician who also had not recognized that Elizabeth suffers from far more and serious impairments than she considered.

The court will not evaluate every argument made by Elizabeth because it finds that the ALJ never adequately explained why she rejected the evidence that

Elizabeth cannot function in a work setting at least one day per work week after taking a required medication for one of her impairments.

### A. Elizabeth suffers from CVID, among other impairments.

One of Elizabeth's severe impairments is known as common variable immunodeficiency or "CVID." It is an immune deficiency disease "characterized by low levels of protective antibodies and an increased risk of infections." *See https://www.niaid.nih.gov/diseases-conditions/common-variable-immunodeficiency-cvid#:~:text=Common%20variable%20immunodeficiency%20(CVID)%20is,also%20can%20occur%20in%20children.*

She has been treated for this disease by a well-known expert in the field, Dr. Bernstein, who is a professor of medicine at the University of Cincinnati. As the ALJ recognized, Dr. Bernstein has prescribed—and Elizabeth has received since about 2016 and throughout the remaining period under review—weekly subcutaneous immunoglobulin replacement therapy via a medication known as Hizentra. (R. 1534). Dr. Bernstein explained in a transcribed "question/answer" interview by Elizabeth's counsel that Elizabeth suffers certain side effects from the weekly Hizentra infusion and that these are known effects of the medication. He noted that Elizabeth's complaints that the medication leaves her with very low ability to function for at least one day after each infusion—because of fatigue, arthralgias, swelling, headaches, and nausea—are consistent with the kind of effects a person might have from the medication. Dr. Bernstein also stated that

8

because of the severity of the side effects experienced by Elizabeth, her infusion dosage of Hizentra has been maintained at a low amount, even subtherapeutic, but she still realizes benefits that assist her body's ability to fight infection. (R. 1948-49).

Elizabeth described to the ALJ during the hearing how the weekly infusions regularly affect her and stated that for a day or two after an injection she spends her time around her home trying to rest but feels very sick and nauseous. During that time, she is not able to attend to normal daily activities and receives help from live-in relatives. (R. 1530-32). Her mother and stepfather live with her, her husband, and two children. (R. 1663).

### B. The ALJ did not rationally explain why the RFC did not include an accommodation for the effects of the weekly injection.

The ALJ did not provide any accommodation for Elizabeth's serious difficulties with functioning for at least one day after her weekly injection. Only two reasons for that failure are apparent from the ALJ's decision—the kinds of activities Elizabeth can usually engage in and the date of the Q&A with Dr. Bernstein. Neither reason provides substantial evidentiary support for the lack of an accommodation.

While the record does indicate that Elizabeth usually can take care of her young school-age children and attend to activities around her home (cooking meals, walking the children down the driveway for school bus pickup, going to parent/teacher conferences, attending to personal hygiene, reading, and gardening), the ALJ never addressed Elizabeth's testimony that she cannot carry out normal

daily activities after her injections. The ALJ did not point to anything in the record that undermines Elizabeth's testimony about the weekly debilitating effects of the Hizentra medication or her reliance on live-in family members when those occur.

The ALJ rejected Dr. Bernstein's Q&A expert opinions that support Elizabeth's statements about the effects of Hizentra on the ground that the Q&A occurred in June 2020, well after Elizabeth's insurance status had expired in December 2018. But the record is clear that Elizabeth has been prescribed Hizentra since 2016—before her insurance status expired—and there is no suggestion that Dr. Bernstein's opinions about the use, efficacy, and side effects of Hizentra did not apply to the entire time Elizabeth has received Hizentra infusions or were somehow limited to a period from June 2020 forward. Moreover, Dr. Bernstein specifically affirmed that the opinion he gave in August 2017 that the side effects of the medication make it "very difficult for her to sustain any type of work" had not changed. (R. 1950).

The vocational expert's testimony was clear that for unskilled work (as the RFC provides), a typical employer permits only eight days of absences per 12-month period (R. 1542). If the ALJ were to have credited Elizabeth's and Dr. Bernstein's statements about the weekly effects of Hizentra on Elizabeth, then Elizabeth could not have performed any of the jobs the VE testified were available. Because substantial evidence for the ALJ's rejection of Elizabeth's and her doctor's statements is lacking, the court must reverse and remand the ALJ's decision.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge REVERSE and REMAND under sentence four of 42 U.S.C. § 405(g) the Commissioner's decision that Elizabeth was not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Dated: February 2, 2022

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system